Our next case is RICHARDS v. SEN. RICHARDS v. SEN. I represent Alan Richards, a lone independent inventor with an absolute genius for chemistry who invented one of the most important chemical processes that's been discovered in the last hundred years. What takes us to Florida? What takes us to Florida is an act of outright crime, such as theft and fraud. If there's a crime, that's fine. That'll be determined later. The question is, why would we go to the Florida court instead of the Pennsylvania court? Because the patent rights in this court sit squarely and clearly and legally in Florida. Well, the patent rights, by the way, rest with Professor Sen and Pennsylvania State. No, they don't. They stole it. They do not properly own that patent. The patent rights in this process belong to Alan Richards. I took your glasses, and I drove with them over to Pennsylvania. Or actually, I should say, you were visiting in Pennsylvania, and I took them there. I mean, your glasses are in Pennsylvania. So how do you have minimum contacts with Florida? Let's put it this way. If a computer hacker... He lives in Florida. He lives in Florida. He has lived in Florida continuously during this entire time. That has been known to Penn State this entire time. He lives in Florida. The patent was sought from Penn State. It was obtained. The patent was stolen from Alan Richards. No, the patent wasn't stolen. We believe the invention was stolen, that he was not the true first inventor. They didn't steal his patent. He did not possess a patent that was later stolen. He does possess a patent on this exact same invention. He has a lawful set of patent rights. They are in Florida. If he was a professor in Afghanistan, would this case then lock all jurisdiction? Because, of course, we couldn't go to Afghanistan. Let me put it this way. If a computer hacker... It's a U.S. patent. Therefore, we go to where the U.S. patent is, right? We don't go to where the purported inventor is. If he says he's a purported inventor in Afghanistan, could we bring a case in Kabul? You go to where the property is. Under the venue statutes of the U.S. patent law, if the property is located in a certain jurisdiction, it is entirely fair to establish jurisdiction. What is the property in this instance? The property in this instance is the patent rights that belong to... No, no, no. What is the property? The property is Alan Richards' invention, which was stolen from him by Penn State, saying we are the true inventors and he is a thief trying to steal it from us. It's absolutely false. It was libelous. It was an act of libel committed against a Florida resident. Let me try another thing. You realize that we're just talking semantics here. Judge Moore and I are, I think, correctly pointing out that under the law, the patent is the property right, and that is located in Pennsylvania. Let me ask it this way. Why can't you go to Pennsylvania and get your rights? Well, first off, trying to sue Pennsylvania State University in front of a jury of Pennsylvania taxpayers who realize that if they give a proper and just award, it will come out of their pocketbooks. That's not fair. You're now insulting the justice system of the United States, saying that it can't do justice anytime there's someone from a local jurisdiction involved. I'm certainly not intentionally insulting the justice system of the United States. I'm saying that if they... Well, then why can't you go to Pennsylvania and get justice? And if there is a miscarriage of justice, I think we can promise you that we will look at that very carefully here when you come on appeal. The specific act that we are trying to establish jurisdiction over right now is an act of defamation committed against Alan Richards. They specifically, Pennsylvania State University, specifically named Alan Richards and effectively inter alia labeled him as a thief in a published document, which was posted on the Patent Office website. They said that Alan Richards is a thief and a crook who stole their invention from them. They said this in their reexamination proceeding. They have defamed him. The lower court already decided a lack of personal jurisdiction, and the only piece of evidence I understand that is different from the first complaint to this complaint is the statement, the 2009 statements. Is that right? Is that the new basis for jurisdiction at ULM? That is a crucial basis, which in itself is sufficient to support jurisdiction in Florida, yes. Now, beyond that, I will state, I will assert, and I hope that the court will agree and understand that the initial decision was simply wrong. The court chose to ignore... The initial decision was wrong? The initial decision finding no personal jurisdiction in the first case? Didn't we already rule 36 that decision previously? Let's put it this way. The initial decision by the district court in Florida basically said, I just don't choose to believe that a crime was committed. You know, just because you've said that a crime was committed doesn't mean a crime was committed. In order to reach that conclusion, he had, the judge in that case, had to effectively ignore a long, detailed paper trail, which very specifically showed and proved to anyone who understood the facts of that case that it was an act of theft and fraud. Mr. Kelly, Mr. Sen and Professor Sen and Penn State and Dr. Richards had some kind of a contract, didn't they? Yes. Which state law was recited in that contract? It was Pennsylvania state law. This is not a lawsuit for breach of contract. But doesn't that kind of suggest to you that the parties themselves thought they'd end up in Pennsylvania if there was a problem? Let's put it this way. If there were assumptions like that on the part of Pennsylvania State University, they were overcome clearly by the letter from me to Penn State University in June of 2005, which was sent to them, sent to half a dozen officials at Penn State saying, you have got a big problem here. There is an act of fraud being committed against Alan Richards, who is the individual who owns this patent, and you need to look into this problem and you need to fix it. I sent them that letter a full year before they decided to pay the issue fee on their patent application. They knew about that letter. They knew about those warnings for a full year before they chose, as a discretionary act, to pay that issue fee. The crucial date in deciding whether they had fair warning that they would in fact be hailed into court if they did such and such was the date on which they paid the issue fee. The court was completely erroneous in saying it's when they first signed the contract. No. A lot of things happened between the time they first signed the contract and the time the patent office said in response to a fraudulent prosecution in which they deliberately withheld information from the examiner that they managed. Let me interrupt your arguing of the merits, which we trust will be argued in an appropriate forum in due time, and let me ask you a question about jurisdiction and due process. I've been looking at the Florida State Court decision in Internet Solutions. Absolutely. I have come away with the impression that this is directly in your favor insofar as jurisdiction is concerned. But where are we and that the district court, even though this was after the district court decision, at the same time the district court did raise the question of due process, and my impression is that that is still unresolved. How do you relate the Internet Solutions case with due process? Because if in fact it also has shifted the balance on due process, then perhaps your choice of forum has much more strength to it. I agree with that analysis. I don't believe it focused so much on due process as on the state long-arm statute. It said we can bring them in under the state long-arm statute. My reading is that it can be read as having crossed that bridge. Of course, the district court also did say that he felt that under the state long-arm statute there could be jurisdiction and declined to reach the due process issue. But in the Internet Solutions, didn't the state court resolve due process in favor of the Florida forum, or is that leading too much into it? You certainly are pointing in the right direction. They definitely held in favor of being able to establish jurisdiction over the outside company in a Florida court. Yes, 100%. That is true. We could take this and, you know, take it back to the district court and say, please reconsider in light of such and such. But we have not gotten, I would say, favorable treatment at the hand of the district court so far. I think he just plain ignored the fact that an actual crime had been committed. And under the Strassheim decision— Mr. Kelly, isn't there a pretty significant distinction between that Internet case and this one? In that case, the defendant owned and operated a website which was defaming someone. In this case, the website that you allege is the same is not owned by Penn State. It's owned by the PTO. The posting that was— And you're not charging the PTO with defamation, are you? No, but there's a crucial difference in that website. The Penn State University sent in an utterly, grossly false and defamatory document knowing that it would be posted— Unless the merits of the case. Let's stay away from that now. Knowing— Let's just stick with the— Right. They sent it in. And now did the PTO knowingly defame Alan Richards? No, they simply posted what Penn State said to them. And this is different from that Internet solutions case, isn't it? That is a point of distinction between this and that case. But Penn State sent in a false and fraudulent document knowing that it would be published. They should be held accountable for sending in an utterly false document. They didn't send it to Florida. They sent it to anyone and everyone around the entire United States, and it targeted, it specifically, directly, by name targeted a Florida resident and said, this guy's a crook. Don't trust him. Don't believe him. He stole our invention. By the way, the PTO has reexamined this. What was the outcome? The outcome of that was that Alan Richards, after having spent $50,000 of his own money for—to Penn State, said, please run these tests for me. They took his money, and then they stole his invention. He did not have the $8,000 that he needed to file reexamination on an inter-partis basis, so he filed a reexamination request on an ex-parte basis. They sent in their documents, which was utterly false and fraudulent, with a certification saying, we've sent it to Mr. Kelly. In fact, they hadn't. They kept it hidden from me for as long as they possibly could. When I finally saw it, I called the examiner and said, this is wrong. This is false. I'm going to respond as soon as I can. She said, I am not going to listen to anything that you have to say or do about this case because it's ex-parte. Now, I'm sorry, but he could only afford $2,500 worth of justice at the time, so that's all he could afford to pay on that particular filing fee. It came out against you. It came out against us in a way that even violated due process. There was a due process violation by the patent office. They supposedly were examining the Senn patent, and she ended up taking an utterly unjustified swipe at the Richards patent while she was doing it. She damaged the Richards patent without giving Richards any chance whatsoever to stand up and defend his property. That's a violation of due process. Would you like to retain your rebuttal time here? Yes, I would. Thank you. Thank you, Mr. Kelly. Ms. Gonzo, Ganoza. May it please the Court, Laura Ganoza on behalf of the Appellees in this case. Your Honor, we must affirm the lower court's decision in dismissing this case. This is the third order. The order that's on appeal before Your Honors here is the third order that Judge Moore has entered that has dismissed this case for a lack of personal jurisdiction over these non-resident defendants. The pleading that was dismissed in this case, although it was just the one complaint, it's actually the fifth attempt for Mr. Richards to file a pleading that pleads, much less establishes, that there is personal jurisdiction over these non-resident defendants. But the district court relied more on due process than on personal jurisdiction, did it not? Well, in the original order, in the November 2008 order, Judge Moore found that only one of the claims, which is the defamation claim, only one of the claims would fall in under the long arm. The tort claims. The judge seemed concerned about making decisions of patent priority and entitlement and joint inventorship and so on in the Florida district court without going through the patent office procedures. But it was the tort claims, wasn't it? Well, it was actually just the defamation claim. The court in the November 2008 order then went through all the other claims in that lawsuit, for example, the tortious interference claim, and found that there was no activity that was conducted in Florida which could create personal jurisdiction under that section. The court also examined the declaratory relief and found that what you're really alleging are the conduct of these defendants in filing this patent. That all occurred in Pennsylvania, and therefore those two claims would not have arisen under Florida law, under the long arm statute. Let me go back to the question. I asked you, the district judge in Florida did agree that as far as the defamation, as far as the torts alleged under Florida law were concerned, that they were subject to the long arm statute. Is that correct? Correct. Initially, yes. Just the tort of defamation. Why aren't, in fact, at least these claims subject to the long arm statute, as the district court found? Well, because then the court went on to analyze, even though it found that none of the other claims would fall under the long arm, it went on to consider the due process considerations. And the court was very thorough in its analysis of the due process considerations and looked to see what were the minimum contacts that the defendants had with this case. What did the defendants do to purposely avail themselves of the privileges of Florida law? And under that due process analysis, the court found that there could be no personal jurisdiction. And to the point that Judge Moore made earlier when was asked what was the new basis of personal jurisdiction that was provided in the instant lawsuit, I would submit that Judge Moore analyzed the very things that Mr. Richards' claim is the new evidence, which is this 2009 statement to the patent office. Judge Moore reviewed that, specifically reviewed that in his order when he denied the motion for reconsideration. We must remember that there was an initial order granting the dismissal in the first case. Then Mr. Richards wanted to submit additional evidence. That evidence was allowed, and the evidence that was allowed was the 2007. He said, how can I consider 2009 evidence for a complaint that was filed in 2007? And he also went on to say in that same paragraph that it would mean that any defendant's filing could be used against them as a purposeful availment of the state where the other party resides. And the court said that that is, he used the word absurd, because it would be merely because the defendant is defending itself in a reexamination proceeding brought by the plaintiff, would any filing that the defendant did, whether it was done at the beginning of the case or at the end of the case, it would still come down to where the plaintiff lives. And the court specifically said that there could not be purposeful availment. So for that reason, we believe that on the collateral estoppel issue that it was accurate. But then when Judge Moore found this case again and was confronted with these same facts and these same arguments, Judge Moore went on and did consider these very statements and said that even assuming, even assuming that you can consider this evidence and that it's out there in the internet, the defendants still with these statements did not purposely avail themselves of the privileges of operating under Florida law. And that's in a footnote 3 on page 8 of the court's order dismissing the case now for the final time, which is why we're here on appeal. So even if the court doesn't take to the collateral estoppel argument and find that that is a reason why it should be, this case should be affirmed still on the factual elements underlying how you find jurisdiction. If you do a de novo review, there's still no long arm or due process. It was due process on which it was dismissed. I think let's concentrate on that. Okay. Okay. Well, even though, even in that case. Are you saying that the trial judge was wrong? Well, I'm saying that, and if you notice in the Marshall decision, the court, the Florida Supreme Court does analyze the very Richards decision that was the underlying case. And the court in the Marshall case specifies that the Richards decision was a very, very broad interpretation of when defamation can rise to the level of falling within the long arm statute. And I would submit, and I would submit that there is an additional distinction in the Marshall case than in our case. One of the things in the Marshall case, the court ruled that it not only, the defamatory material not only had to be accessible in the state of Florida, it also had to be accessed in the state of Florida. And what's very important is there has been no allegation and certainly no record evidence of that being, of the PTO statements being accessed by anyone in Florida apart from maybe Mr. Richards, which wouldn't count as a defamation because it has to be to a third party. So I would submit that the way the Marshall was decided, there is even now a limited factor because Judge Moore focused on the accessibility, but didn't focus on the fact of whether something was accessed by a party, a third party in Florida. And I would suggest that there is no record evidence to that here. What about internet solutions? Because as Mr. Kelly pointed out, they did send this information to the PTO knowing it would be on their website. Why isn't that the same as being the website publisher yourself? Well, because the internet solutions versus Marshall case did talk about the operator of the website. And we don't have Penn State or any of the defendants being the operator of the website where this allegedly defamatory statement was published. Well, maybe that makes it even worse. It was sent to the patent office, which is a national body, which published it. Well, it was sent, but that wasn't sent to Florida. The inquiry is, is the defendant's conduct such that it purposely availed itself of the laws and privileges of the state of Florida? And by submitting a document to a federal agency that's located in Virginia, there was no purposeful availment of any of the Florida laws. If there were laws that were being, the benefits that were being obtained was certainly not of Florida. We're still talking about the long-arm statute, which was resolved. I think we need to concentrate on the due process. Correct. And another point that's very clear, one of the points that you asked was whether the internet solutions versus Marshall case blurred the line or extended the line a little further between what you look at in terms of a long-arm as it relates to the due process. And the court was very clear to say that they, they emphasized that they were only asked to address the first step of the inquiry, which is whether the long-arm applies. It went on to say the second step is a much, is a more restrictive one. Precluding suit in any situation where the exercise of jurisdiction over the non-resident defendant would violate due process. This question is not before us in the certified question and we do not deem it necessary to broaden the question in order to address the due process inquiry. And here we have a person who lives in Florida who does business, who enters into a business deal with someone who lives in Pennsylvania. That's a much closer relationship than the relationship in internet solutions where they didn't know each other at all and had no interaction. So as a matter of due process, you have to say there still was no due process despite the personal relationship between these parties. Well, importantly in the, in our case, the contract was between Penn State and Mr. Sen and GCL. I asked about the personal relationship where they had an exchange of information and consultation. There was also a contract, a confidentiality agreement, which may or may not also be relevant to the case, but let's, it's not before us. But we know that there was a direct personal relationship, much more direct. Again, in internet solutions there was no relationship between them. That was part of the problem, but the state court nonetheless found that the long-arm statute reached the entity that issued the defamatory information. That is correct, but there, the focus is still on where, in your example, the focus is still on where Mr. Richards was located. And in terms of determining what the plaintiff did, it was, what the defendants did, that all still occurred in Pennsylvania. It wasn't like they, no one ever came to Florida to negotiate the agreement with Mr. Richards in Florida. Mr. Kelly tells us that this is Richards' personal property. We know by statute the patent is personal property as far as his patent is concerned. So why isn't that relevant? Well, it would seem that at that point Mr. Richards is falling under a different category of the long-arm statute, which would be section 48.131F. We're talking about due process. We've crossed the long-arm breach. The district court already crossed it for us. Okay, well, it's still, in looking at the due process, you still have to look at what the defendants did in purposely availing themselves of the rights and privileges of the state. No, you have to look and see whether it's reasonably fair to sue on these facts, accepting the allegations of the plaintiff in the plaintiff's home territory. Isn't that the issue of due process? Well, you have to see if it would be reasonable to hail the defendant into that forum. And how do you know if it's reasonable to bring the defendant into that forum? You have to look at what they did in terms of what their acts were in Florida. Did they have an office? You have to see both of them. You have to see overall what's fair in the jurisprudence of the nation in order to resolve an obviously acrimonious and serious dispute. Correct. In that vein, we've alleged and it's been undisputed that the defendant's conduct is the fault. There's no offices. They have no agents in Florida. They didn't solicit the business in Florida. Mr. Richards approached them. You're talking about the long-arm statute again. Let's go back to due process. Well, still with the due process, you still have to look at what the defendant's conduct is in relation with the forum. And in that case, the defendant didn't have the markings of someone that would be hailed to Florida. There was no office in Florida. They didn't have bank accounts in Florida. They didn't come to Florida. They didn't negotiate in Florida. The only thing you have is an email that Mr. Richards says, please send this to me at this address in Florida. But there's other correspondence that has Mr. Richards' address in Texas. So you still don't have the situation where they could expect to be there. And if I may address... Let's send it to Texas. Just shocking you a bit. We also raised, in addition to the personal jurisdiction, we also raised venue issues, and this case could be just as easily determined on a venue issue in that the elements that they need to look at is whether a substantial part of the events or omission occurred in Florida or not. And we would submit that they didn't. None of the events occurred in Florida. If you're going to be looking at where's the evidence, where are the witnesses, where is everything, it's in Pennsylvania. And so for that reason as well, we would submit that there is ample basis to affirm this decision. Thank you, Ms. Canosa. Mr. Kelly, you have two and a half minutes. Okay, I wish to firmly deny any statement that you have to purposely avail yourself of the privileges of this state. No, you don't. There are half a dozen other ways. For example, if you steal something from out of that state, if a computer hacker is hacking into somebody's banking account in Florida and stealing money from that banking account in Florida, he's not availing himself of the laws and privileges of doing business in Florida. He's availing himself of the cash that's in that person's bank account in Florida. There's no question that that Florida victim could haul him into a Florida court to get his money back. That is directly analogous to the situation we're talking about. It's also like defamation. If you hurl a hate bomb at somebody that is utterly untrue and it lands in Florida, you don't have to avail yourself of the privileges of doing business in Florida. You want to stay out of it. All you want to do is fire your cannon or your mortar in that direction and hope it crosses the state line. So everything she's saying about you have to avail yourself of the privilege of doing business in Florida, no, you don't. We have to meet the due process standards. Now, I will mention again briefly, if you read the letter that I sent them a year before they paid that issue fee, if you think there is any way that they can claim and pretend we had no idea we might be sued in Florida, that is nonsense. It's a letter from a lawyer saying your guy is committing fraud. You have a terrible problem here. You need to look at this. You need to fix it. And if you think that letter wasn't sufficient, then tell me what else I could have said in private correspondence to somebody before it's time to file a lawsuit to warn them that they're going to be sued. Now, finally, the Strassheim decision is the Supreme Court doctrine on this issue. If somebody commits a crime, a theft, a fraud, a true crime which impacts this state, you can and you should look at the impact in that state to determine whether that person can be held into court in that state. The Strassheim decision applies. She tried to pretend it doesn't, but it does. It's been cited in hundreds of cases with approval. If you will look at Ashman Sen's letter, his statement, and his provisional patent application in Exhibit 14, if you understand that sentence right there, and Alan Richards expanded it into a full paragraph explaining what it means in his reply brief, if you understand that sentence right there, you cannot come to any conclusion other than Ashman Sen committed a fraud, which is a crime, when he said that Alan Richards was not even the inventor, even though Alan Richards told him about the reaction and how to do it. Thank you. Thank you.